McFADDEN v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Common Carrier**: LOSS OF PROPERTY: PETITION. A petition in an action against a common carrier for loss of property received for carriage, which alleges the delivery and loss of the property, is sufficient.

2. ———: NEGLIGENCE, STIPULATION AGAINST. While a shipper may release a common carrier from its obligation as an insurer of his property, yet the carrier cannot, by any kind of stipulation, exempt itself from liability for its own negligence.

3. ———: ———. Where a railroad, receiving mules for shipment, placed them in a car, bedded with straw, next to the engine, which the uncontroverted evidence shows was negligent and dangerous conduct on its part, and the car was ignited by sparks from the engine and the mules were burned, the provision in the bill of lading, whereby the shipper assumed the risk of loss or injury to the mules by fire, or on any account whatever, is no protection to the carrier.

4. ———: WRITTEN CONTRACT OF SHIPMENT: EXTRINSIC EVIDENCE. All prior oral negotiations between a shipper and common carrier are merged in the written contract of shipment, and the former cannot admit the execution of the contract and also claim that he did not read it or know its contents, where no mistake, fraud, imposition, or deceit is charged to have occurred.

92 343
35a 85

92 343
38a 420

92 343
40a 37

92 343
46a 666

92 343
51a 673

92 343
56a 482

92 343
57a 363
57a 555

92 343
62a 466

92 343
136 193
68a 265
68a 274

92 343
74a 97
74a 413

92 343
149 324
77a 253

92 343
90a 331

92 343
98a 4423

92 343
101a 2453
101a 2454
101a 4456

5. ——— : ——— : ———.  A recital in the written contract that the shipping rate charged was a special and reduced one, is merely *prima facie* evidence of that fact and is open to explanation or contradiction.

6. ——— : ——— : ———.  A stipulation in a written contract of shipment, placing a limited valuation on the property shipped in case of its loss by the default of the carrier, when not made in consideration of special or reduced rates of shipment, is not binding on the shipper.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*T. J. Portis T. G. Portis* and *W. S. Shirk* for appellant.

(1)  Plaintiff's agent, Frost, accepted the bill of lading, without any fraud or imposition being practiced upon him, and without making any objections to its terms.  It was, therefore, the sole agreement under which the stock was shipped, and plaintiff is bound by its terms.  Hutchinson on Carriers, sec. 265 ; Lawson on Cont. of Carriers, sec. 102, and authorities cited ; *Snider v. Adams Ex. Co.*, 63 Mo. 376 ; *O'Bryan v. Kinney*, 74 Mo. 125 ; *Railroad v. Cleary*, 77 Mo. 634 ; *Brown v. Railroad*, 18 Mo. App. 568.  It follows that the court erred in refusing to give defendant's second instruction. (2)  Plaintiff's own evidence, which was not contradicted or varied by any evidence offered by the defendant, conclusively shows that the mules were destroyed by the straw and hay, used in the car for bedding, taking fire.  The contract read in evidence specially exempted defendant from liability on account of loss thus occasioned.  Such a stipulation is a reasonable one, and binding on the plaintiff.  Lawson on Cont. of Carriers, sec. 122 ; *Squire v. Railroad*, 98 Mass. 239.  The evidence shows also that the loss occurred solely from the

straw in the car taking fire, and it devolved upon the plaintiff to show that the car being placed next to the engine was negligence on the part of the company, and caused the fire. This he did not do. *Read v. Railroad*, 60 Mo. 199, on p. 206, and authorities cited; *Railroad v. Corcoran*, 40 Ark. 375; s. c., 18 Am. and Eng. R. R. Cases, and authorities cited in note. Defendant's first instruction should, therefore, have been given. (3) At most, defendant was not liable for more than one hundred dollars per head for the mules. The stipulation to that effect in the contract of shipment is valid, and binding on the plaintiff. Lawson on Cont. of Car., sec. 122; Hutchinson on Car., sec. 249, and authorities cited; *Rice v. Railroad*, 63 Mo. 314; *Harvey v. Railroad*, 74 Mo. 538, and authorities cited; *Hart v. Railroad*, 112 U. S. 331; *Brown v. Railroad*, 18 Mo. App. 568. And such stipulations of exemption do not contravene the rule that a carrier cannot stipulate for exemption against his own negligence. *Rice v. Railroad*, 63 Mo. 314, on 318 and 319, citing, *Express Co. v. Caldwell*, 21 Wall. 264; *Harvey v. Railroad*, 74 Mo. 538, on 545-6; *Hart v. Railroad*, 112 U. S. 331. Where the law is thus plainly settled by the adjudications of our own Supreme Court we deem it useless to cite other authorities. It follows that the court committed error in giving the plaintiff's instructions, and in refusing to give the fourth and fifth instructions prayed by the defendant. (4) The court, by giving the sixth instruction asked by defendant, told the jury that the mere fact that the car containing the mules was placed next to the engine did not of itself constitute negligence on the part of the defendant. This was the only act, which it was attempted to prove, constituting negligence. The verdict was, therefore, unsupported by any sufficient evidence under this instruction, and the motion for a new trial on this ground should have been sustained.

*Cosgrove & Johnston* for respondent.

(1) A common carrier cannot, by contract, change his liability to that of a mere forwarder, nor absolve himself from liability for his own negligence. *Galt v. Adams Express Co.*, 48 Am. Rep. 742 ; *Lupe v. Railroad*, 3 Mo. App. 77 ; *Harvey v. Railroad*, 74 Mo. 538 ; *Dawson v. Railroad*, 79 Mo. 296. (2) The defendant's negligence in this case was such as it could not stipulate against. *Powell v. Railroad*, 32 Pa. St. 414 ; *Holsapple v. Railroad*, 86 N. Y. 275. (3) The evidence shows the freight rates charged plaintiff were the usual ones, and hence the stipulation fixing the valuation of one hundred dollars each on the mules was without consideration, and not binding on plaintiff. That a railroad or other common carrier cannot thus limit its liability, or arbitrarily fix a value upon property lost or injured by its negligence, is well settled by nearly all the courts of last resort of this country, though, as expressed by a learned judge, "we are aware that in some of the states, notably in some which possess, or, perhaps, are possessed by vast railroad corporations, the doctrine of exemption by special contracts has been carried to extremes." *Galt v. Adams Express Co.*, 48 Am. Rep. 742 ; *Moulton v. Railroad*, 31 Minn. 85 ; *Railroad v. Simpson*, 17 Cent. Law Jour. 474 ; *Scruggs v. Railroad*, 18 Fed. Rep. 318 ; *Black v. Goodrich Trans. Co.*, 55 Wis. 319 ; *Kirby v. Adams Express Co.*, 2 Mo. App. 369 ; 2 Rorer on Railroads, p. 1248, *et seq. ; U. S. Express Co. v. Bockman*, 28 Ohio St. 144. (4) The instructions fairly submitted the issues to the jury, and correctly declared the law.

RAY, J.—Plaintiff brought this action in the circuit court of Cooper county, against the defendant, as a common carrier, to recover the value of a car load of mules, delivered to defendant at Boonville, to be transported

over its railroad to the state line, at Kansas City.
Whilst in transit, the car containing the mules caught
on fire, and thirteen head were burned to death, and
the other three so injured as to be a total loss to the
plaintiff.

An objection was made to the introduction of any
evidence, upon the ground that the petition did not state
facts sufficient to constitute a cause of action, which said
objection was properly overruled. The petition not only
alleged the delivery and loss of the mules, whilst in de-
fendant's possession, as a common carrier, which was
sufficient, but charged negligence in managing and
operating the train, whereby the car was set on fire and
the mules burned, injured, and destroyed. No other
point was made, in respect to the pleadings, and we
need not set them out.

The evidence of plaintiff shows the delivery of the
mules by plaintiff to defendant; that the car, in which
they were transported, was bedded with straw, and
placed next to the engine ; that this was not customary,
but unusual and dangerous, and prudence required that
such cars should be placed at a greater distance in the
train from the engine; that the rear of the train was
the safest place, whilst next to the engine was, for such
cars, the most dangerous, on account of the liability of
the straw bedding to take fire from the sparks of the
engine. It should be, also, stated, that the train in
question consisted of fifteen or twenty cars, but two of
which, beside the one in question, were loaded with
stock, and of these, one was placed next to the car con-
taining the mules injured by the fire, or second from the
engine, whilst the other was put near the rear end of the
train, and next to the caboose. This was the substance
of the evidence in chief, in behalf of plaintiff.

Defendant offered no oral testimony in the cause,
but relied upon the bill of lading, or contract of ship-
ment, which it set up in the answer and read in evidence

at the trial. The evidence in rebuttal will be considered later, in the course of this opinion.

It has been held in this, and most of the states, that, by special or express contract, or special acceptance, fairly and understandingly made, the carrier may limit his common-law liability. The shipper may, lawfully, if he sees fit, surrender the obligation of the carrier, as an insurer of his property, but the law is firmly settled, in this state, that the common carrier cannot, by any sort of stipulation, exempt himself from the consequences of his own negligence. We need not, again, discuss that question.

If placing the car bedded with straw, containing the mules, next to the engine, was unusual, negligent, and dangerous, and the car was set on fire by sparks from the engine, and the mules thereby destroyed, all of which the evidence for plaintiff shows, without any attempt at contradiction from defendant, then, under numerous rulings of this court, the provision in the contract, whereby the plaintiff assumed "the risk of loss or injury to the mules, by fire, or any account, whatever," would be, so far, invalid, and no protection to the defendant.

In an analogous case, the Supreme Court of Pennsylvania, in considering the liability of common carriers, say: "A defective wheel, or axle, or frame work, would confessedly render them liable, even as against the release. The carrying of a combustible article, so near the engine as to be exposed to sparks, was even more inexcusable ; for this could not escape observation, as defects in the vehicle might." *Powell v. Railroad*, 32 Pa. St. 414. See, also, *Holsapple v. Railroad*, 86 N. Y. 275. At all events, in the absence of all opposing evidence on the part of defendant in that behalf, this court must, after verdict, assume the negligence of defendant, and dispose of the case under that view.

But the stipulation in the contract of shipment,

most relied on for a reversal of the judgment, is the one declaring the company should not be liable for more than one hundred dollars per head for the mules. Such a stipulation, it is claimed, is valid and binding, and does not contravene the rule which forbids the carrier to stipulate against his own negligence. Numerous decisions sustain such stipulations, when fairly made, and where the parties agree on a fixed valuation of the property, and a special and reduced rate of freight is given and received, based upon the condition that the carrier assumes liability, only to the extent of the agreed value of the property. *Hart v. Railroad*, 112 U. S. 331, and cases cited.

Other decisions deny the validity of such provisions, and hold them void, as releasing the carrier from the *full and proper* liability for the consequences of his negligence. *Black v. Trans. Co.*, 55 Wis. 319; *Moulton v. Railroad*, 31 Minn. 85; *U. S. Express Co. v. Backman*, 28 Ohio St. 144. Hutchinson on Carriers says, in substance, that the cases cited by him as recognizing the right of the carrier to thus limit the liability as to value occur in states in which the law permits the carrier, by special and express contract, to relieve himself of the consequences of his negligence in the carriage of goods, and that these cases would not be considered controlling authority in those states in which such claim to exemption is not permitted to be made. Secs. 247, 250.

But, even under the rule declared in the former class of decisions, these provisions, thus employed and resorted to by common carriers to restrict their liability, are to be tested by their fairness, justice, and reasonableness. We will consider the case before us briefly under this view. The answer charges that defendant agreed to transport the mules for plaintiff, between said points, at the rate of thirty-one dollars per car, which was charged to be a special and reduced rate, lower than

the regular rate.   The written contract, read in evidence, recited that the  said rate was a  reduced rate,  made in consideration of agreement, etc.   The execution of the contract was  not  admitted,  but  denied  in the reply. The  evidence,  however,  showed  that it was, in fact, signed by the agent of plaintiff, after the mules  were loaded into the cars, and just before the train  started. This court has  heretofore held that all prior verbal  negotiations between the parties are merged in the written contract, and that the plaintiff cannot admit the execution of the contract, and avail himself of the fact that he did not read the same or  know  its  contents,  where no mistake, fraud, imposition,  or  deceit is charged to have occurred.

In this case, plaintiff claimed, and was permitted to show by parol evidence, that the said recital in the contract of shipment, that the rate named was a reduced rate, was false, and that the same was the usual and customary rate charged all shippers for similar shipments of such stock by the car load.   The oral evidence, in that behalf, was not objected to by defendant, when offered by plaintiff, and no exception saved to its admission in evidence.   The following is the substance of this evidence, as given in the abstract for plaintiff, and is, we believe, correct.

R. S. Moore testified that :   He was the agent of the railway company at Boonville ; that the bill of lading in evidence was of the same form in use by the company in April, 1884, and had been for a year before that time. Everybody that shipped stock used this form.   This is the regular rate of shipment of stock by the car load. The rates on other classes of freight per car load were much higher considering the value of the mules.   These were the usual rates paid by all shippers of stock by the car load.

Mr. Frost, who acted in behalf of plaintiff, in making the shipment and signed the contract, testified that :

Nothing was said about the bill of lading being a special contract; that he never asked for reduced rates, but that he shipped the stock and signed the bill of lading, in this instance, just as he had done in all others, when acting for other shippers, and that, so far as he knew, the bill of lading in this case was the ordinary one and signed by him in all other cases of stock shipment.

The written contract was not, we think, under these circumstances, conclusive evidence, but merely *prima facie* evidence, that the given rate was a special and reduced rate. As between the parties, it was, in this respect, open to explanation, and impeachable for error, mistake, or false statement. The reduced rate, if such it was, was the consideration for the exemption from liability beyond the one hundred dollars, even in case of injury and loss from defendant's negligence, and parol evidence in that behalf is, we think, competent and admissible for the purpose indicated. The consideration clause in bills of lading, contracts, deeds, and other instruments, ordinarily, has only the force and effect of a receipt, and is open to explanation and contradiction by parol evidence. Hutchinson on Carriers, secs. 122, 123 ; *Fontaine v. Boatman's Sav. Inst.*, 57 Mo. 552 ; *Hollocher v. Hollocher*, 62 Mo. 267 ; *Edwards v. Smith*, 63 Mo. 119.

But, even if this is not so, it devolved upon the defendant to make the objection to the admissibility, and save the exception, if the objection was overruled, and having failed to do so, no complaint can now be heard at his instance in that behalf. This case, then, under this state of facts, does not fall within the rule declared in *Hart v. Railroad*, 112 U. S. 331, and others cited by counsel for plaintiff. In the case of *Hart v. Railroad, supra*, especially relied on, the discussion was had upon the terms of the bill of lading alone, and as the court say, "without any evidence upon the subject, and

especially in the absence of evidence to the contrary," and under the qualifications it contains, we cannot regard it as controlling authority in a case where the evidence clearly shows absence of reduced or lower rate, or any graduation of compensation to the valuation.

On the one hand it may be, as is there said, unjust, unreasonable, and repugnant to sound principles of fair dealing, for the shipper to reap the benefits of a contract, by which he secures a lower rate than the carrier might reasonably charge for the service rendered, if there be no loss, and to repudiate it in case of loss. Where the shipper procures the lawful rates of the carrier to be reduced in express consideration of the agreed value, upon which the compensation is based, he is, under numerous authorities, some of which are cited, held to be estopped to say the value is greater when the loss occurs. On the other hand, it would, we think, be no less unfair, unreasonable, and unjust that the carrier, without any sacrifice of his interest, or lawful demands, or diminution of his lawful charges, should secure, without any consideration therefor, such important advantages and release of liabilities to which he would otherwise be subjected under the law.

Another case, especially relied on, is the case of *Harvey v. Railroad*, 74 Mo. 538, which we deem distinguishable from this present case, and which we will now examine briefly. In the first place, the action was brought upon a special contract. The horse was alleged to be of the value of ten thousand dollars, and the value was limited by the contract to the sum of one hundred dollars. The answer set up the affirmative defence, that the defendant had certain regular rates of transportation for horses of ordinary value, and that for those of greater value five per cent. on the owner's valuation was charged in addition. That defendant asked plaintiff or his agent, the value of the horse, and that said value was falsely represented to be one hundred dollars,

and that said valuation given by the plaintiff was then agreed on. Defendant offered evidence tending to establish the matters set up in the affirmative defence, and instructions numbered two and three, submitting this evidence to the jury, were refused by the court. The third was to the effect, in substance, that if Dickson intentionally misrepresented the value of the horse, and stated it much lower than it actually was for the purpose of procuring the lower rate, then plaintiff could only recover the value which he had fixed. This court held it error to have refused the instructions asked, and said, "We do not regard a contract limiting a right of recovery to a sum expressly agreed upon by the parties, as representing the true value of the property shipped, as a contract in any way exempting the carrier from the consequences of its own negligence. Such a contract fairly entered into leaves the carrier responsible for its negligence and simply fixes the rate of freight, and liquidates the damages. This, we think, it is competent for the carrier to do. And where the reduced value is voluntarily fixed by the shipper with a view of obtaining a low rate of freight, without any knowledge on the part of the carrier that the property was of greater value, it would be a fraud upon the carrier to permit the shipper to recover a greater sum than that fixed by him."

In the case now before us, there was no pretense that the plaintiff, or his agent, fraudulently concealed or falsely represented the real value of the mules. They were delivered without any inquiry or representations as to value. They may have been a somewhat choice lot of mules, but they were not of extraordinary or fanciful value, such as blooded stock, or on account of speed or other qualities, as in the *Harvey case,* and there is no pretense that defendant was in any way deceived as to their value, or misled as to the degree of care they would require. On the other hand, the recital that the

given rate was a reduced rate, was in fact false, as was shown by the evidence of the station agent, who testified it was the usual rate charged all shippers.

If, in the one case, it is competent for the carrier to show that the real value of the property was concealed, and the lower rate thus secured by the fraud, or deceit of the shipper, why may not the shipper be permitted to show that the alleged reduced rate, in consideration of which he surrendered the obligation imposed by law upon the carrier, as an insurer of the property, was false and in fact no reduced rate at all.    It may be that plaintiff was not deceived by it, at the time, as he did not ask for, or suppose he was getting, a reduced rate, but if the pretended lower rate was the usual rate, and known to be such to both parties, it would work a fraud upon the rights of plaintiff, under the law, if the defendant were permitted to treat it as a lower rate, and to thus deprive plaintiff of important rights, and thus secure release of part of its liability, by reason thereof.

Under the circumstances of this case, there was, we think, no consideration for the limited valuation placed upon the mules by defendant, and the stipulation in that respect is, we think, void, as releasing the carrier from the full and reasonably adequate liability for its negligence.    The instructions given for the plaintiff were in harmony with these views, whilst those refused for the defendant were not in accordance therewith.

Finding no error in the record, we affirm the judgment, and it is so ordered.    All concur.