DAVID ROGAN *et al.*, Appellants, v. THE WABASH RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, December 6, 1892.

1. **Bill of Lading**: SPECIAL LIMITATION OF DAMAGES. While it is not competent for a common carrier to contract against liability for

damages for its own negligence, it is competent for it to enter into a special contract with the shipper, providing that the standard of damages should be the value of the goods shipped at the place and time of shipment. But such a contract will be restrained, by interpretation, merely to fixing the market by the standard of which any general damages should be measured.

2. ———: ———. *Held*, in the course of discussion, that a special agreement with the shipper, fixing any measure of damages different from that which the law would fix for the negligence of the carrier—as where it excludes special damages which the law would allow in its absence—will be upheld, if it is fairly made, and is founded upon a consideration consisting of a contract for a lower rate of freight than would otherwise be charged.

3. ———: SPECIAL DAMAGES FOR NEGLIGENCE OF CARRIER. The damages for the breach of a contract must be such as the parties may fairly be supposed to have contemplated when they made the contract. And, when there are special circumstances, by reason of which peculiar or special or consequential damages may accrue from the breach of a contract to the obligee therein, these must be communicated to the obligor at the time of the making of the contract in order to charge him with a liability for such damages. This rule is applied in this cause to a claim against a common carrier for his failure to seasonably deliver goods carried by him.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Mills & Flitcraft*, for appellants.

The carrier is responsible for damages resulting from failure to deliver promptly. *Dawson v. Railroad*, 79 Mo. 296; Hutchinson on Carriers [2 Ed.] sec. 328. Damages are such as naturally arise from failure to deliver promptly. *Pruitt v. Railroad*, 62 Mo. 534; *Railroad v. Dunbar*, 20 Ill. 623; 71 Am. Dec. 291; *Railroad v. Rae*, 18 Ill. 488; 68 Am. Dec. 574; *Smeed v. Ford*, 28 L. J. Q. B. 179; *Hadley v. Baxendale*, 9 Exch. 341; *Railroad v. Pritchard*, 77 Ga. 412; *Railroad v. Loonie*, 19 S. W. Rep. 385; *Express Co. v. Darnell*,

62 Tex. 639.   The rule relating to damages for failure to deliver live stock is analogous, and should be applied.   *Ballentine v. Railroad*, 40 Mo. 491, 505. A carrier delayed by any obstruction must forward promptly after obstruction is removed.   Carrier cannot by contract limit its liability from loss occasioned by its own negligence.   *Nickey v. Railroad*, 35 Mo. App. 79;  *Conover v. Express Co.*, 40 Mo. App. 31.   The instructions refused should have been given,  and the exclusion of plaintiffs' evidence was erroneous.

*F. W. Lehman* and *Geo. S. Grover*, for respondent.

(1)  The allegation contained in the plaintiffs' petition as to defendant's knowledge at the time of the shipment, of the purpose for which the goods were to be used, was completely disproved.   It was, therefore, a clear case of failure of proof on that point, so that the instruction for nominal damages was all the plaintiffs were entitled to in the cause.   Revised Statutes, 1889, sec. 2238.   (2)  A carrier cannot be held responsible for speculative damages, or profits lost or expenses incurred by reason of a delay in transit, unless it contracts for the delivery of the freight in a specified time, with full knowledge at the time of the execution of such contract of the uses to which the freight is to be put upon its arrival, as well as the necessity for its speedy delivery.   There was no attempt to prove such a state of facts in this case.   *Hadley v. Baxendale*, 9 Exch. 341; Hutchinson on Carriers, secs. 772, 773, and cases cited; *Scott v. B. & N. O. S. Co.*, 106 Mass. 468; *Crater v. Binninger*, 33 N. J. Law, 513; *Hamilton v. McPherson*, 28 N. Y. 72; *Krom v. Levy*, 48 N. Y. 679; *Richardson v. Chynoweth*, 26 Wis. 656; *Railroad v. Ragsdale*, 46 Miss. 458; *Hughes v. Hood*, 50 Mo. 350; *Wilson v. Weil*, 67 Mo. 399; *Connoble v. Clark*, 38

Mo. App. 476; *Gray v. Packet Co.*, 64 Mo. 47. (3) Where there has been, as in this case, a failure to establish the material allegations of the petition, and, where a mere mistake or negligent act is shown, without any proof of any damage resulting from such act, it is the duty of the trial court to instruct the jury to return a verdict for nominal damages. *Webb v. Coonce*, 11 Mo. 9; *Jones v. Hannovan*, 55 Mo. 468; *McCord v. Railroad*, 21 Mo. App. 92; *Hayes v. Dalzell*, 21 Mo. App. 679; *Breen v. Fairbank Co.*, 35 Mo. App. 212. (4) The stipulations contained in the bill of lading in evidence are valid. *Harvey v. Railroad*, 74 Mo. 538; *Caples v. Railroad*, 17 Mo. App. 14; *Brown v. Railroad*, 18 Mo. App. 568.

THOMPSON, J.—This action was brought to recover damages from the defendant, a railway carrier, for failure to deliver within a reasonable time a shipment of goods which the plaintiffs, through their agent, had committed to the defendant for carriage from St. Louis, in this state, to Santa Anna, Texas. There was a trial before a jury, at the conclusion of which the court directed the jury to return a verdict for nominal damages only. The propriety of this direction is the only substantial question upon this appeal.

It is necessary to an understanding of the question presented for decision to get a clear idea of the issues involved in the case. The petition states in substance:

"That the plaintiffs were copartners engaged in the milling business in the town of Santa Anna, Texas; that prior to July, 1890, the plaintiffs bought from the Wormer Machinery Company, in the city of St. Louis, Missouri, a large quantity of mill machinery, comprising a large number of parts, appliances and articles essential for the running of a flour mill, and directed the Wormer Machinery Company to ship the same to plaintiffs at

Santa Anna, Texas; that said machinery was delivered to defendant by said Wormer Machinery Company, in the city of St. Louis, properly marked and prepared for shipment and addressed to plaintiffs at Santa Anna, Texas, on the eighteenth day of July, 1890, that by the ordinary course of business said articles would have reached their destination on the twenty-seventh day of July, 1890; *that on or about the time of shipment, and especially on the twenty-seventh day of July, 1890, the defendant was notified that the machinery so shipped was for immediate use in the flour mill; that the articles were essential for the running of the mill, and great damage would ensue and would continue to be suffered by plaintiffs in being deprived of said machinery, whereby they would be deprived of the use of the mill, and could not grind the grain they had on hand and offered to them to be manufactured into flour, and that plaintiffs were under heavy expense, etc.;* that defendant negligently billed said goods to San Antonio, Texas, a point far distant from Santa Anna, although said goods had been plainly and distinctly addressed to said plaintiffs at Santa Anna, Texas; *that, after defendant had been notified of the non-delivery of said goods, it failed to have the same recalled and transported to plaintiffs, and continued to neglect to make said delivery until September 3, 1890.*"

The damages prayed for were as follows:

The rental value of the mill while lying idle from July 27, 1890, to September 3, 1890, $233.25. The average profit of grinding wheat at plaintiffs' mill while it was so idle, which would have been the sum of $939.96; pay of miller during delay, $69; pay to other employes during said time, $242.50, making the aggregate sum of $1,484.71, for which judgment was prayed. The answer, after a general denial, set up that the defendant, on the said eighteenth day of July, 1890, received from the plaintiffs' agent, at its depot in

St. Louis, certain pieces of iron pipe and castings, more particularly set forth in a bill of lading attached to the answer, which the defendant then and there undertook to transport for said plaintiffs to its next succeeding carrier, to be thence transported to the town of Santa Anna, Texas; that its receipt for said property, given before the issue of its bill of lading, was as follows:

"ST. LOUIS, 9–18–1890.

"Received in good order by Wabash Railroad Company from the Wormer Machinery Company Theo. K. Wormer, general manager, to be delivered to Rogan & Lambertson, at Santa Anna, Texas: [Here followed a catalogue of the articles, with nothing to indicate that they were intended for other use than for sale as articles of ordinary merchandise. This receipt or dray ticket then continued with the following recitals:] No. ——. Non-negotiable and subject to all the conditions and exceptions printed in the bills of lading commonly used by said company and known.as form 117."

The answer then proceeded to state what the conditions and exceptions in the said form of bill of lading were. These conditions and exceptions.as thus pleaded, and also as proved at the trial, were, among other things, as follows: *"Sixth.* It is further agreed that the amount of loss or damage accruing to the owner of said goods, in so far as the same shall fall upon this or any connecting carrier, shall be computed at the value or cost of said goods at the place and time of shipment." The plaintiffs, by a reply, put in issue the new matter set up in the answer.

The evidence adduced on behalf of the plaintiffs at the trial showed that the shipment was made, as admitted in the pleadings, on the eighteenth day of July, 1890, by the Wormer Machinery Company, as the plaintiffs' agent at St. Louis, from whom the

plaintiffs had bought the goods; that, in ordinary course of transit, the goods should have arrived at Santa Anna, Texas, not later than the twenty-seventh of July following, but that, not having arrived on the fifth of August, the plaintiffs telegraphed to the Wormer Machinery Company at St. Louis, inquiring for them; that thereupon an employe of the Wormer Machinery Company took the telegram to the claim agent of the defendant in St. Louis, and told him that the pipe described in the dray ticket was needed very badly, because they could not do anything further toward getting their mill started, as it was necessary for connecting the engine with the boiler. The precise date when this notice was communicated to the defendant's claim agent is not stated, but it is reasonable to suppose that it must have been on, or soon after, August 5, 1890. On the nineteenth of August, 1890, a second telegram was sent by the plaintiffs to the Wormer Machinery Company at St. Louis, as follows:

"Piping not arrived. Ship new supply piping by Schuyler. Order via Santa Fe.'

"ROGAN & LAMBERTSON."

This telegram was excluded by the court as evidence, on the ground that it was not competent under the plaintiffs' theory of the case, and the plaintiffs saved an exception. The employe of the Wormer Machinery Company, who had shown the first telegram to the claim agent of the defendant, testified that he stated to the defendant's claim agent the contents of this telegram and told him that the goods had not arrived, whereupon the latter stated that he was doing all he could to get them there. In this conversation the claim agent told the witness that the goods had been located at San Antonio, Texas, to which place they had been shipped through a mistake of defendant's billing clerk, and that they would be delivered

soon. This testimony was corroborated by Mr. Wormer, the manager of the Wormer Machinery Company, who fixed the date of the receipt of the second telegram at the twentieth of August, and the day when he spoke to the defendant's claim agent about the non-arrival of the goods at the twentieth or twenty-second of August.

It was admitted by counsel for the plaintiffs at the trial that the copy of the bill of lading attached to the answer was a correct copy of the bill of lading issued at the time of the shipment of the goods, and that the court should consider the bill of lading and dray ticket, as set forth in the defendant's answer, as in evidence. On the other hand, it was admitted by counsel for the defendant—what the evidence conclusively showed—that the shipment had gone astray by the negligence of the defendant. On the question of damages there was considerable evidence adduced by the plaintiffs, tending to prove the suffering by the plaintiffs of the consequential damages alleged in the petition. Mr. Wormer, the manager of the Wormer Machinery Company, testifying for the plaintiff, stated in substance that such of the piping and fittings as were shipped in full lengths were merchantable goods, and had a market value in St. Louis, but such of them as had been cut were not merchantable and had no market value at St. Louis. But no evidence was given tending to show what the market value of any of the goods at St. Louis was.

I. Upon this statement we must hold that the court committed no error in directing the jury to return a verdict for nominal damages only. In the first place, the amount of *general damages* recoverable was governed by the terms of the special contract embodied in the bill of lading, referred to in the dray ticket already quoted. *Caples v. Railroad*, 17 Mo. App. 14.

While it was not competent for the defendant to contract against liability for damages for its own negligence, it was clearly competent for it to enter into a special contract with the shipper, such as the one in this case, providing that the standard of damages should be the value of the goods at the place of shipment. But, in view of the principle which we shall presently state, the contract would be restrained by interpretation merely to fixing the market by the standard of which any *general damages* recoverable should be estimated. As there was no evidence tending to show what the value of the goods was at the place of shipment, or to what extent, if any, they had depreciated by reason of the negligence of the carrier in failing to deliver them at Santa Anna within a reasonable time, the evidence furnished no basis for the recovery of substantial damages under the special contract, and the court, therefore, rightly directed the jury to return a verdict for nominal damages only.

In opposition to the conclusion, that the damages are to be governed by the special contract, as it is admitted that the delay was occasioned by the negligence of the defendant, we are referred to several decisions in this state to the effect, that it is not competent for a common carrier to impose a contract on the shipper, limiting the amount of damages which may accrue through the negligence of the carrier. Such was the decision of this court, following several of the decisions of the supreme court and of this court, in *Nickey v. Railroad*, 35 Mo. App. 79. But in two subsequent cases, *Doan v. Railroad*, 38 Mo. App. 408, and *Conover v. Express Co.*, 40 Mo. App. 31, this court again went over the subject, reviewing the decisions in this state and concluding, on the authority of *McFadden v. Railroad*, 92 Mo. 343, which essentially modified the previous case of *Harvey v. Railroad*, 74

Mo. 538, and the decision of the Kansas City Court of Appeals, in *Brown v. Railroad*, 18 Mo. App. 568, that a carrier cannot, by a special contract with the shipper, limit the amount of damages which the shipper shall recover by reason of the negligence of the carrier; though an agreement fairly made, liquidating the damages in case of loss or injury, will be upheld, where it is founded upon a *consideration* consisting of a contract for a lower rate of freight than would be charged but for such special agreement. Such was the conclusion of this court (reviewing the authorities) in *Conover v. Express Co.*, 40 Mo. App. 31. This principle must be allowed to apply, not only to cases where there is a special contract liquidating the amount of damages which may be recovered, but also to cases where there is a special contract fixing any measure of damages different from that which the law would fix under the evidence in the particular case,—assuming always that the loss or damage has happened in consequence of the negligence of the carrier or his servants. If, therefore, in the present case the evidence had established a case in which, under the principles of the common law, as settled in this state, the special or consequential damages laid in the petition could be recovered, it may be conceded that the special contract would not prevent their recovery, because there is no evidence that the special contract was assented to by or on behalf of the plaintiffs in consideration of any reduced rate of charges for the shipment of the goods.

II. But, if the special contract were laid out of view, the plaintiffs could not under their petition recover the consequential damages claimed, for the reason that the evidence adduced by the plaintiffs utterly failed to make out the allegation of the petition, that the defendant was notified, on or about the time of shipment, and especially on the twenty-seventh of July, that the goods were for immediate use in the plaintiffs'

flour mill, that the articles were essential for the running of the mill, and that great damage would ensue if the plaintiffs were deprived of the machinery, etc. There was no evidence that the defendant had any such notice at or prior to the date of the shipment, nor until after the first telegram above referred to from the plaintiffs to the Wormer Machinery Company had been received at St. Louis, which telegram was dated on the fifth of August. This brings the case within the rule of *Hadley v. Baxendale*, 9 Exch. 341, which has often been affirmed as the law of this state, relating to the subject of consequential damages for the breach of contracts. *Abeles v. Tel. Co.*, 37 Mo. App. 554, 566; *Connoble v. Clark*, 38 Mo. App. 478, 482. That rule is that, where two parties have made a contract which one of them has broken, the damages which the other ought to recover in respect of such breach should be such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of the contract, or such as may reasonably be supposed to have been in the contemplation of both parties at the time when they made the contract as the probable result of it. It is a part of that rule that, where there are special circumstances, by reason of which peculiar, special or consequential damages might accrue to the obligee in the contract from its breach, those special circumstances must be communicated to the obligor at the time of the making of the contract in order to charge him with a liability for such damages. *Abeles v. Tel. Co., supra.* It may be conceded that the rule does not extend so far as to require that the parties must have contemplated the actual damages which are to be allowed. But the rule exacts that the damages must be such as the parties may fairly be supposed to have contemplated when they made the contract; for in point of fact parties, when they enter into contracts, usually contemplate

that they will be performed, and not that they will be violated. *Leonhard v. Tel. Co.*, 41 N. Y. 545; s. c., 1 Am. Rep. 446, 452. In the case of *Abeles v. Tel. Co.*, *supra*, this court, following the holdings of many other courts, held that the rule of damages above stated exacts that when a telegraphic message is sent in cipher, and the telegraph company is not apprised of its meaning, no more than nominal damages can be recovered for delay in delivering it. While, as the opinion in that case shows, the holdings of American courts upon the rule of damages in question are not uniform, and while, as cases from other jurisdictions cited to us by the learned counsel for the plaintiffs show, some of the courts which profess to follow the rule of *Hadley v. Baxendale* are not consistent in their applications of it, we take it that there can be no doubt, upon the evidence in this case, that damages consisting of losses which might happen to the consignees of these articles of merchandise, growing out of the fact that they had a grist mill nearly completed and a certain quantity of wheat ready to grind, and certain other wheat coming in, and certain skilled hands employed whom they could not discharge, and that they were subject to a certain loss of profits by the delay which followed the non-delivery of the articles in getting their mill started, of none of which circumstances the defendant had any notice at the time of making the contract, could not be regarded as fairly within the contemplation of the parties to the contract. For this reason also it seems to us that the court was right in directing a verdict for nominal damages only, unless the plaintiffs have shown a right to recover special damages upon another branch of their case.

III. Their petition, as already seen, alleges that, after the defendant had been notified of the non-delivery of the goods, it failed to have the same recalled and transported to the plaintiffs, and continued to fail

and neglected to make a delivery of the goods until the third of September, 1890. The argument is that, after the defendant was thus apprised on or after the fifth of August, 1890, of the failure of the goods to arrive at their destination, the defendant by its agents put the plaintiffs off, and lulled the plaintiffs into a feeling of confidence in the speedy arrival of the goods, with promises to have them traced and immediately forwarded to the plaintiffs, in consequence of which promise the plaintiffs neglected to supply themselves with other articles to take the place of those which were thus lost. We do not gather any definite evidence which would have authorized an admeasurement of special or consequential damages, proceeding from any negligence of the defendant in failing to trace the articles after being notified of their non-delivery, and to find them and deliver them within a reasonable time thereafter. While the plaintiffs offered an instruction upon the theory of this allegation of their petition, we do not gather that the evidence was in such a condition as would have warranted the court in submitting such an element of damages to the jury. In order to make a case for a recovery under this allegation of the special damages alleged in the petition, it would have been necessary for the plaintiffs to prove what would have been a reasonable time for the tracing and discovery of the goods and getting them to Santa Anna, after the defendant was apprised of the special circumstances creating the special or consequential damages alleged in the petition. Upon this question the evidence seems to be entirely silent.

We, therefore, conclude that the circuit court committed no error in directing the jury to return a verdict for nominal damages only. The judgment is accordingly affirmed. All the judges concur.