FRANK K. DOAN, Respondent, v. THE ST. LOUIS, KEOKUK AND NORTHWESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 27, 1891.

1. **Res Adjudicata:** SECOND APPEAL. When a cause has been brought to this court and is remanded for another trial, the rulings of this court on such appeal become the law for the retrial of the case.

2. **Practice, Appellate:** WEIGHT OF EVIDENCE. In actions at law this court will not determine controverted issues of fact, and it will not disturb a finding of the jury on the ground that it is contrary to the testimony of witnesses, when such testimony is controverted by the physical facts of the case.

3. **Instructions:** REFUSAL: UNJUSTIFIABLE NUMBER, The appellant in this cause having offered twenty-three instructions, held that the trial court would have been justified, by reason of their number, in refusing all of them.

Doan v. The St. Louis, K. & N. W. Ry. Co.

*Appeal from the St. Louis City Circuit Court.*—Hon. Jacob Klein, Judge.

AFFIRMED.

*H. H. Trimble* and *Reynolds & Lewis*, for appellant.

*Rowe & Morris*, for respondent.

THOMPSON, J.—This case, which was before the court on a former appeal ( 38 Mo. App. 408 ), has been tried upon the same pleadings, and upon substantially the same evidence. The trial resulted in a verdict and judgment for the plaintiff in the sum of $766.06. The defendant again appeals to this court, and submits the case upon a printed abstract, statement and argument, in which the facts of the case are set out with great fulness, and in which all the instructions given, refused and modified are printed. Upon the premises thus laid an able and elaborate argument is made, directed almost entirely to questions of fact. We cannot of course decide controverted questions of fact ; and, in so far as this argument touches questions of law, most of these questions were ruled against the appellant on the former appeal, which rulings have become the law of this case. The circuit court on the trial, from which this appeal is prosecuted, carefully avoided the errors for which its former judgment was reversed by this court, and submitted the case to the jury upon instructions, which certainly afford the defendant no ground of complaint.

Recurring to the facts of the case, they were these : The plaintiff, by his servant, delivered to the servant of the Union Stock-Yards Company at St Louis a valuable horse, to be shipped over the defendant's railroad to Louisiana in this state. In so doing, the defendant preferred the request that he be allowed to load the

horse himself.   The Union Stock-Yards Company was, at the time, the general agent of the defendant for the loading and the unloading of stock shipped by the defendant from and to St. Louis.   Instead of allowing plaintiff to load the horse himself, the servants of the Union Stock-Yards Company undertook to load it in a car of the defendant.   In this they were assisted by a switchman of the defendant, named Sigmeyer, who at the time had charge of making up the defendant's train.   The horse was loaded in such a manner, that it got out and got upon the track in front of the car after the engine had commenced moving the car, and was run over by the car, cut to pieces and killed. Whether a contract of shipment, such as is set up by the defendant in its answer, had been signed for the plaintiff at the time when the horse was killed, was more distinctly controverted on the evidence than it was on the former trial.   According to the defendant's evidence, the horse was not tied in the car but got out by jumping through an end window.   This end window, according to the testimony on the former trial, was but eighteen inches in width and thirty inches in height ; but since the former trial it has increased in width to twenty-two inches and in height to thirty-six inches. One of the defendant's witnesses, who professed to tell the jury " very truthfully " how it occurred, described in a very graphic manner how the horse got out of this small aperture.   His description conveys to the mind's eye the image of a horse climbing through a hole in the end of a car very much as a cat or a dog would do it.   A long argument is addressed to us in support of the proposition of fact, that the horse actually got out through this end window, and not through one of the side doors.   Concerning this we have to say that this is an action at law, and that in actions at law we have no jurisdiction to decide controverted propositions of fact.   This proposition of fact is controverted by the physical circumstances of the case, and we cannot say,

as matter of law, that the jury were bound to believe the defendant's witnesses who detailed it to them.

The instructions upon which the court submitted the case to the jury, given by the court of its own motion, were drawn in conformity with the views of this court on the former appeal, except that they submitted to the jury the question, whether the Union Stock-Yards Company, in loading the horse, acted as the agent of the plaintiff or as the agent of the defendant. This question was fairly controverted upon the evidence. Mr. Ramsey, who was the secretary of the Union Stock-Yards Company, testified that he received the horse for shipment as the agent of the defendant. In answer to a question, who got paid for the loading of this stock into the cars, he said: " Well, no one got paid for it from the shipper. We put in a bill to the railroad company ( meaning the defendant ) at the end of the month for loading cars." In answer to the question, " Who was it paid you for the loading of these two horses in the car?" he said: "If anyone paid us, it was the railroad company." This question was further put: " You had an agreement with them to load and unload all stock for their road?" His answer was: " Yes, sir." Mr. Bleeker, who was the defendant's station agent at St. Louis, also testified that the defendant paid the Union Stock-Yards Company for loading and unloading all its stock cars, that were loaded and unloaded at St. Louis at the time when this accident occurred. This was clearly sufficient evidence to authorize the court to submit to the jury the question whether, in loading this horse upon the defendant's car, the Stock-Yards Company acted as the agent of the plaintiff or as the agent of the defendant.

Another argument is directed to us in behalf of the defendant upon the proposition of fact, that the contract of shipment set up in the defendant's answer was in fact signed before the horse was killed. The question it will be remembered was submitted by the court

to the jury for their decision. The evidence adduced by the defendant was that it was so signed. The evidence adduced by the plaintiff was that Mr. Ramsey, the agent of the Stock-Yards Company, admitted to him that it had not been so signed. The plaintiff's evidence upon this point was to the effect that, upon being informed through the telephone of the accident, he immediately drove to the defendant's office, and there called upon the defendant's station agent, Mr. Bleeker, and was informed by him that he, Bleeker, had no contract. He next called upon Mr. Ramsey, the secretary of the Stock-Yards Company ( whom, as we have already seen, the jury were warranted in regarding as the agent of the defendant in the premises ), and asked Mr. Ramsey for the contract, and Mr. Ramsey admitted that there was no written contract. This was certainly sufficient to put in controversy the question, whether there was a written contract at the time when the horse was killed, and the court, therefore, committed no error in submitting that question to the jury. If there was no such contract, then, as we stated in our former opinion, the defendant stood under the liability of a common carrier, and hence of an insurer, and exhibited no defense whatever against the plaintiff's demand, except the defense that the accident happened through the negligence of the plaintiff, by his agent the Union Stock-Yards Company, in the performance of the duty, which he had thus voluntarily assumed, of loading the horse into the defendant's car.

The defendant requested the court to give to the jury twenty-three instructions. Some of these instructions were long, and two of them were broken into several paragraphs. The court might with great propriety have refused them all because of their number alone. The court nevertheless, out of evident solicitude for the rights of the defendant, took the pains to wade through them, and to eliminate what the court deemed the good from the bad, so that the court in fact gave

thirteen of these instructions, but with certain modifications. These modifications are now complained of. They consisted entirely in attaching to certain of the instructions the qualifications, which submitted to the jury the question: *First*. Whether the contract of shipment had been signed before the horse was killed, and, *secondly*, whether the Stock-Yards Company, in loading the horse, acted as the exclusive agent of the plaintiff or as the agent of the defendant. We have said enough to indicate our view, that there was no error in attaching these qualifications to these instructions. These instructions, as thus modified and given, were much more favorable to the defendant than it had a right to demand. Without entering into particulars, it is plain to us that, if the verdict and judgment had been in favor of the defendant, the judgment must have been reversed because of the giving of some of these instructions. Certainly no error was committed in refusing any of the other ten which the court refused. The twenty-three instructions thus tendered by the defendant were, taken together, a series of cumulative arguments on questions of fact, very much of the same nature as the printed argument which has been addressed to this court. They embodied in the aggregate an attempt to argue the case to the jury through the mouth of the judge. As the jury were adequately and properly instructed by the court in the three instructions, given by the court of its own motion, upon the leading points upon which their decision must turn, no error would have been committed in refusing any number of other instructions, tendered by either party, however well drawn. No error was, therefore, committed in refusing any of these twenty-three instructions, even if they had been well drawn; whereas the action of the court was very favorable to the defendant.

There is no merit in this appeal, and the judgment will accordingly be affirmed. It is so ordered. All the judges concur.