THE F. A. DREW GLASS COMPANY, Appellant, v. THE
OHIO AND MISSISSIPPI RAILWAY COMPANY,
Respondent.

St. Louis Court of Appeals, April 7, 1891.

Common Carriers: LIMITATION OF LIABILITY OF FIRST CARRIER.
When a railway company receives goods consigned to a point
beyond its own route, but issues a bill of lading to its own terminal
point only, expressly stating therein that it will carry the goods
no further, and limiting its liability to loss or damage occurring
on its own line, this limitation of liability is valid, notwithstanding
the statute. ( R. S. 1889, sec. 944.)

*Appeal from the St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

AFFIRMED.

*Mills & Flitcraft*, for appellant.

Section 598, .Revised Statutes, 1879, is a part of
every contract made by a carrier which issues a receipt
or bill of lading in this state, and overrides any provis-
ion or condition in the contract inconsistent therewith.
*Heil v. Railroad*, 16 Mo. App. 363; *Craycroft v. Rail-
road*, 18 Mo. App. 489; *Baker v. Railroad*, 34 Mo.
App. 98.

*Pollard & Werner*, for respondent.

ROMBAUER, P. J.—The plaintiff shipped on the
defendant's road a box containing plate glass, consigned
to James E. Clay, Paris, Kentucky. By the terms of
the contract between the plaintiff and Clay, the title in
the goods remained in the plaintiff until their delivery
at the depot in Paris. The defendant's road does not
run to Paris, but terminates at the intermediate point

of Cincinnati, Ohio, where it connects with the Kentucky Central railroad. The freight was safely carried by defendant to Cincinnati, and there delivered in good condition to the connecting carrier above mentioned. While it was being unloaded at Paris from the cars of the connecting carrier, it was negligently handled by such carrier, resulting in a breakage of part of the glass. The plaintiff thereupon brought this suit under section 944 of the Revised Statutes, 1889, claiming that by its provisions the defendant became liable for the negligence of the connecting carrier. The defendant in its answer claims that the terms of the bill of lading, constituting the contract of shipment, preclude any liability on its part under the statute. The trial court sustained the defendant's claim, and declared that the plaintiff could not recover, whereupon the plaintiff took a nonsuit, and, after an unsuccessful attempt to set it aside, brings the case here by appeal.

The bill of lading under which the shipment was made contains the following recitals and conditions :

"Received from F. A. Drew Glass Company by Ohio & Mississippi Railway Company the packages described below, marked and consigned as indicated, which said company agrees to transport with as reasonable dispatch, as its general business will permit, to destination, if on its road, or otherwise to the place on its road where same is to be delivered to the consignee, or to such connecting carrier upon the following terms and conditions ......

"Responsibility of any carrier shall cease as soon as said property is ready for delivery to next carrier or consignee, and each carrier shall be liable only for loss or damage occurring on its own line.

" Marks.   JAMES E. CLAY, Paris, Kentucky.

" Bill of Lading ( weights subject to corrections ).

"From St. Louis to Cint. (Cincinnati)."

The effect of section 944, Revised Statutes, 1889, upon the liability of a carrier who, within this state,

receives goods for transportation to a point beyond the terminus of its road, for loss caused by the negligence of a connecting carrier, has been recently under consideration by the supreme court in the case of *Dimmitt v. Railroad*, 103 Mo. 433. If we understand that decision correctly, it lays down the following propositions:

*First.* That a common carrier may contract to carry to a place beyond the terminus of his road, and thereby render himself liable as such for the whole distance, but that he is not required by law to transport beyond his own line, and, therefore, may, notwithstanding the statute, stipulate that he shall not be liable except for such loss or damage as may occur in his own route.

*Second.* That the purpose of the legislature in enacting the section above mentioned was to prescribe a definite rule of liability for negligence of a common carrier, in harmony with what has been known as the English rule upon the subject, whereby such carrier, when he receives a parcel to be transported to a place beyond the terminus of his route, is held to be liable as such to the place of destination, in the absence of a specific contract to carry such parcel only to the terminus of his own route, or limiting his liability to loss or damage occurring on his own route.

*Third.* That *prima facie* the issue of a through bill of lading is evidence of a through contract, but that the defendant may show that, by specific agreement, it contracted only to carry the property to the terminus of its own road, or limited its liability to loss or damage occurring on its own road.

In that case the company issued a bill of lading, by which it agreed to deliver certain articles, marked as below, at Omaha Station, to consignee or owner, or to such company or carrier as per directions in margin. The only marks and directions in the margin were "J. W. McAleer, Deadwood, Dakota Territory, *via* Ft. Pierre. Account, Dougherty & Co.".

The supreme court held that this was a through bill of lading, presumably on the ground that, while the carrier agreed to deliver the articles at Omaha Station ( which was the terminus of its road ), to a connecting carrier, yet the marks and directions in the margin indicated that they were to be carried to Deadwood, which was beyond Omaha, and there was nothing in the bill of lading to indicate that the connecting carrier was not to be the defendant's agent in the further transportation of the goods, nor anything to indicate that the defendant was not to be liable for the negligence of such carrier; hence, the cause was clearly one within the statute.

It will be seen that the court, by its declarations in that case, construed the meaning of the scope of section 944 somewhat differently from the construction given to it by us in *Heil v. Railroad*, 16 Mo. App. 363, and *Orr v. Railroad*, 21 Mo. App. 333, and wholly differently from the construction placed upon it by the Kansas City Court of Appeals in *Craycroft v. Railroad*, 18 Mo. App. 487. The declarations made in these cases, as far as the same are inconsistent with those made in the *Dimmitt case*, must yield to the superior authority of the last case, and are no longer controlling. The English rule referred to in the opinion of the supreme court is that, in the absence of a special condition, the first carrier is liable to the destination and is exclusively liable ; that, for want of privity of contract, the connecting carrier cannot be sued by the shipper, even though his negligence caused the loss. Lawson on Carriers, sec. 239.

We do not understand that that part of the English rule, which gives no action against the connecting carrier whose negligence caused the loss, because there is no privity of contract between him and the shipper, has been the prevailing rule even those states of America, which heretofore followed the English rule in other respects. On the contrary, we think it has been

generally held throughout this country that the law implies a contract, in the case of a through shipment, between the shipper and each carrier who receives the goods for further transportation. *Lin v. Railroad*, 10 Mo. App. 125, and cases cited. We assume, therefore, that, when the supreme court says that the object of the statute is to adopt the English rule, it does not mean to say that that part of the English rule, which holds that there is no privity of contract between the shipper and connecting carrier, is now also a part of the law of this state. We also assume that the supreme court, by saying in the *Dimmitt case* that a mere limitation of its liability to loss or damage happening on its own line was sufficient to exonerate the first carrier from liability for loss or damage caused by the negligence of a connecting carrier, did not mean to convey the idea, that such limitation was in itself effectual, although the contract is one of through carriage. Such never was the English rule. In *Coxon v. Railroad*, 5 H. & N. 274, the contract recited: "For the convenience of the owner, the company will receive the charges payable to other companies for conveyance of such cattle over their lines of railways ; but the company will not be subject to liability for any loss, delay, default or damage arising on such other railway." Speaking of this condition BRAMWELL, J., aptly remarked: "They do not say that they will not carry on another railway, but only that they will not be liable for damages arising on such railway. So there is an absolute refusal of liability for damage, but not a refusal to carry."

But the law declared in the *Dimmitt case* certainly goes to this extent: That, where the bill of lading is only to the terminal point of the first carrier, and expressly states that he will carry the consigned property no further, and limits his liability to loss or damage occurring on his own line, the limitation is valid, notwithstanding the statute, and exempts the first

carrier from liability for losses occurring on connecting lines.

In the case at bar the bill of lading purports to be one from St. Louis to Cincinnati, and the carrier agrees to carry to point of destination only if such point is on its road, and provides that each carrier shall be liable for loss on its own line. If, therefore, the carrier may receive goods, knowing that their ultimate destination is beyond the terminus of his own line, and knowing that the shipper expects a continuous through shipment without any further direction on his part, and yet, notwithstanding the statute, may issue a bill of lading to the terminus of his own line only, agree to carry the goods to that point only, and stipulate that he shall not be liable for losses occurring on connecting lines, then the defendant cannot be held liable in this case, as it is conceded that the goods were damaged after it had parted with their custody. Applying the law as stated in the *Dimmitt case* to the facts of this case, we must conclude that the trial court did not err in declaring that the plaintiff could not recover.

Judgment affirmed. All the judges concur.