T. J. HILL, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 9, 1891.

Common Carriers: LIABILITIES BEYOND ITS LINE: STATUTE. Under section 944, Revised Statutes, 1889, a railway carrier, receiving goods in this state to be shipped over its own and connecting lines to the point of destination, may stipulate in the contract of shipment against damages to the goods occasioned by the negligence of the connecting carrier. The opinion follows *Dimmitt v. Railroad*, 103 Mo. 433, and discusses prior cases overruled thereby.

46  517
56  290
56  483

46  517
77  624

*Appeal from the Cass Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

REVERSED.

*R. T. Railey*, for appellant.

Our appellate courts having followed "the American doctrine," and the legislature, desiring that the English doctrine should become the law of this state, in 1879, adopted section 598 of Revised Statutes, 1879. R. S. 1889, sec. 944. It has been held that said statutes have no other effect than to adopt in this state the "English rule." *Dimmitt v. Railroad*, 15 S. W. Rep. (Mo.) 762, 763. The English rule simply presents a *prima facie* case, in the absence of an express contract. Under this rule, the right of defendant as a common carrier to limit its liability to its own line is clearly recognized. *Dimmitt v. Railroad, supra*, 762–3 ; Lawson on Carriers, sec. 239 ; *Jones v. Railroad*, 89 Ala. 376 ; s. c., 45 Am. & Eng. R. R. Cases, 322, and cases cited ; *Falvey v. Railroad*, 76 Ga. 597 ; *Hunter v. Railroad*, 42 Am. & Eng. R. R. Cases ( Texas ) 502 ; *Railroad v. Baird*, 12 S. W. Rep. ( Texas ) 532 ; *Railroad v. Wynn*, 45 Am. & Eng. R. R. Cases ( Tenn.) 315, and cases cited ; *Ball v. Railroad*, 83 Mo. 580.

*H. A. Jones* and *Whitsitt & Jarrott*, for respondent.

(1) The law in this state is, that where a common carrier receives goods or live stock to be transported to a point beyond the terminus of his own line, and expressly or impliedly contracts for a through shipment, such receiving carrier is liable for any negligent injury to any such goods or live stock, whether occasioned upon his own line, or upon that of a connecting carrier over which said stock passes during such transportation. R. S. 1889, sec. 944 ; *Heil v. Railroad*, 16

Mo. App. 363, 368; *Orr v. Railroad*, 21 Mo. App. 336; *Baker v. Railroad*, 34 Mo. App. 112; *Dimmitt v. Railroad*, 15 S. W. Rep. (Mo.) 763; 2 Rorer on Railroads, sec. 6, p. 1234. Where there is a contract of through shipment (as in this case), the receiving carrier cannot by special contract exempt itself from liability from injuries occurring on connecting lines. *Craycroft v. Railroad*, 18 Mo. App. 488, 495, 496, and authorities *supra; Railroad v. Vaughn*, 16 S. W. Rep. (Tex.) 775; *Bank v. Express Co.*, 93 U. S. 174; Lawson on Carriers, sec. 235. Defendant having made a contract of through shipment was bound to transport the stock to the terminus of its own line, and beyond its own line furnish transportation through other lines. *Railroad v. Williams*, 13 S. W. Rep. (Tex.) 639. The connecting lines so furnished or employed are agents of defendant for such transportation, and the defendant is liable for the injuries occurring on such line through the negligence of agents of such connecting lines. Authorities, *supra; Halliday v. Railroad*, 74 Mo. 162; *Railroad v. Vandeventer*, 41 N. W. Rep. (Neb.) 998.

SMITH, P. J.—The petition alleged that the defendant was a common carrier, for hire, of live stock between Pleasant Hill, Missouri, and Shreveport, Louisiana; that defendant employed connecting lines to transfer said stock between said points; that, on the date aforesaid, plaintiff delivered to defendant at Pleasant Hill, Missouri, forty-five mules and three horses belonging to him; that defendant agreed to transport same to Shreveport, Louisiana, and deliver them to him; that said stock was loaded into two of defendant's cars, marked M. P. 6273, and M. P. 6460; that said stock was in good condition when delivered to defendant at Pleasant Hill; that, through the carelessness of defendant, three of said mules were injured, and one of the three died from the effects of said injuries; that said mules were injured by the carelessness and negligence of defendant

in jerking, jamming, starting and suddenly stopping the freight train in which they were being transported ; that plaintiff has sustained damage by reason thereof in the sum of $205, and for which with cost he prayed judgment.

The answer was a general denial coupled with several special defenses therein pleaded one of which was to the effect that said mules were injured between Chetopa, Kansas, and Shreveport, Louisiana, and after they had been turned over by defendant, in good condition, to the Missouri, Kansas & Texas Railroad Company, or the receivers thereof, at said town of Chetopa ; that defendant ceased to have any further control over said stock after it left defendant's line at Chetopa aforesaid ; that said stock passed through the hands of several connecting carriers before arriving at Shreveport aforesaid ; that said mules were not injured by the fault or negligence of defendant ; that the plaintiff and defendant entered into a written contract respecting the transportation of said mules, and that among other things said contract provided as follows: " And it is further stipulated and agreed between the parties hereto, that, in case the live stock mentioned herein is to be transported over the road or roads of any other railroad company, the said party of the first part shall be released from liability of every kind after said live stock shall have left its road ; and the party of the second part hereby so expressly stipulates and agrees, the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the Missouri Pacific Railway Company, excepting to protect the through rate of freight named herein."

The replication admitted the execution of the contract, as alleged in the answer, and that the injury to the mules of which complaint was made occurred while the stock was *en route* of shipment between Chetopa, Kansas, and Shreveport, Louisiana.

There was evidence introduced by the plaintiff tending to sustain the allegations in his petition. The defendant read in evidence the following stipulation: "It is further agreed that none of the animals belonging to plaintiff, as set forth in his petition, were injured while on the line of defendant's road, but were injured between Chetopa, Kansas, and Shreveport, Louisiana; that all said animals were turned over by defendant at Chetopa, Kansas, aforesaid, in good condition, to the Missouri, Kansas & Texas Railway Company, or the receivers of said company." At the close of all the evidence the defendant interposed a demurrer thereto, which was overruled. The plaintiff had judgment, and defendant appealed.

We had supposed, until the decision of the supreme court of this state in *Dimmitt v. Railroad*, 103 Mo. 433, which we shall notice further on, that it was well settled in this state that when a common carrier receives goods or live stock to be transported to a point beyond the terminus of its own line, and expressly or impliedly contracts for a through shipment, such receiving carrier is liable for any negligent injury to any such goods or live stock, whether occasioned on its own line or upon that of a connecting carrier over whose line such goods or live stock passed while on the way to the terminal point ( R. S. 1889, sec. 944 ; *Heil v. Railroad*, 16 Mo. App. 363, 368 ; *Orr v. Railroad*, 21 Mo. App. 336 ; *Baker v. Railroad*, 34 Mo. App. 112), and that in contracts of through shipment a receiving carrier is not permitted by special stipulation to exempt itself from liability for negligent injuries occurring to the subject-matter of the shipment on connecting lines. *Heil v. Railroad, supra; Craycroft v. Railroad*, 18 Mo. App. 488 ; *Orr v. Railroad, supra; Baker v. Railroad*, 34 Mo. App. 99, 112.

The case of *Dimmitt v. Railroad, supra,* was where the plaintiff delivered to the defendant at the

city of St. Joseph, in this state, a box containing six thousand cigars, marked and consigned to McAlier, at Deadwood, Dakota, to be carried and delivered to him there. The defendant received the box and delivered to plaintiff a bill of lading which provided, amongst other things, that the box was to be delivered without unnecessary delay at Omaha Station, to the consignee, or owner, or to such company or carrier as per marks and directions, in margin; and on the margin of which was written a description of the box, the name of the consignees, with the point of consignment. The defendant delivered the box to the connecting carrier at Omaha. It was never delivered by the connecting carrier, the Chicago & Northwestern Railway Company at the place of consignment. The box being lost the plaintiff sued the defendant, the receiving carrier, for its value. The instruction complained of in the case was to the effect that, if the loss was occasioned solely by the negligence of the connecting carrier, the plaintiff ought to recover. Mr. Justice BRACE, who delivered the opinion, remarked: "That the decision of the trial court involves the proper construction of section 598, Revised Statutes, 1879; Revised Statutes, 1889, section 944. * * * In order to determine whether it is obnoxious to any constitutional inhibition, state or national, it becomes necessary first to *ascertain its true scope and meaning*. At the time of its enactment, the law was as well settled as now that a common carrier may *contract* to carry to a place beyond the terminus of his route, and thereby render himself liable as such for the whole distance, but that he is not *required* by law to transport beyond his own line, and, therefore, may stipulate that he shall not be liable except for such loss or damage as may occur on his own route. While there was a universal consensus of opinion upon these propositions, there was a diversity of opinion as to what should be evidence of a contract for through carriage when no special contract was made; the English

courts and the courts of some of the states holding that, 'where a common carrier takes into his care a parcel directed to a particular place, and does not, by positive agreement, limit his responsibility to a part only of the distance, it is *prima.facie* evidence of an undertaking on his part to carry the parcel to the place to which it is directed,' although such place was beyond the terminus of his own route. Lawson on Carriers, sec. 239. The majority of the American courts, however, holding 'that where a carrier receives goods marked for a particular destination, beyond the route for which he professes to carry, and beyond the terminus of his road, he is only bound to transport and deliver them according to the established usage of his business, and is not liable for losses beyond his own line.' Lawson on Carriers, sec. 240. In 1870, this court in the case of *Coates v. Express Co.*, 45 Mo. 238, adopted what may be called the American doctrine on this subject, quoting with approval the language following of Prof. Parsons, formulating the rule : 'The prevailing rule in this country may now be said to cast upon the carrier no responsibility as a carrier beyond his own route.   *   *   *   Unless the usage of the business or of the carrier, or his conduct or language, shows that he takes the parcel as carrier for the whole route.' This ruling was followed in *Snider v. Express Co.*, 63 Mo. 376, decided in 1876. The consideration given by the supreme court to this question, and the conclusion reached by it so recently before this enactment, when taken in connection with the terms employed in the statute itself, leaves little room for doubt that the purpose of the legislature was to prescribe a definite rule of liability for negligence of a common carrier in harmony with what has been denominated 'the English rule' upon the subject. Whereby such carrier, when he receives a parcel to be transported to a place beyond the terminus of his route, is to be held liable as such to the place of destination,

in the absence of a specific contract to carry such parcel only to the terminus of his own route, or limiting his liability to loss or damage occurring on his own route. The enactment as thus construed becomes a rule of evidence by which to determine what the contract of the carrier is in the absence of a specific one in a given case, operates with no undue hardship upon the carrier, and is violative of none of his rights, constitutional or otherwise. By its provisions the act of an acceptance by a common carrier of property to be transferred to a place beyond the terminus of his route is evidence of a contract to carry such property to the place of its destination. The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such carrier to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated. In order to defeat it, the defendant must show, that, by specific agreement, it only contracted to carry the property to the terminus of its own line, or what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line."

This case clearly and unequivocally decides that a railway carrier, receiving goods in this state to be shipped over its own and connecting lines to the point of destination, may stipulate in the contract of shipment against damages to the goods occasioned by the negligence of the connecting carrier. It will not do to say that what is said by Judge BRACE in his opinion is *obiter dicta*, because he declares at the very outset of the opinion that "it becomes *necessary to ascertain the true scope and meaning of the statute.*" There can be no misunderstanding of his interpretation of its provisions.

Our own convictions must give way before this authoritative exposition of the statute, whose effect is

to overthrow and brush away the unbroken line of appellate court decisions in this state, without so much as a bare reference to it. It is quite obvious that, under the statute as expounded and construed by the supreme court, the defendant had the right by contract to limit its liability to its own lines. Upon the undisputed facts in this case the plaintiff was not entitled to recover, and hence the circuit court erred in overruling the defendant's demurrer.

There are a number of other points to which our attention is called in the briefs of counsel, but, in the view which we have been obliged to take of the case, it is unnecessary to notice them. The judgment of the circuit court will be reversed. All concur.