MINTER BROS., Plaintiffs in Error, v. THE SOUTHERN KANSAS RAILROAD COMPANY, Defendants in Error.

Kansas City Court of Appeals, January 29, 1894.

1. **Common Carrier Railroad**: STATION AGENT'S AUTHORITY TO BIND BY BILL OF LADING. *Prima facie* a station agent can only bind his company, in contracts of carriage, to the end of its road, and there must be evidence to show his authority to bind. his company beyond the end of its line, before the company can be held for breaches of contract beyond its line.

2. ———: EVIDENCE: ADMISSION AND EFFECT OF CONTRACT OF CARRIAGE. The admission in evidence of a bill of lading, without objection will not prevent the carrier from raising the point, by demurrer, that there is no evidence to show any authority in the agent signing it, to bind. the carrier beyond its line.

3. ———: BILL OF LADING BINDS. Where a consignor and a railroad
company enter into a contract by which it is provided that the
liability of the latter should cease after the goods had passed out of
its possession, such contract is valid and must be upheld, and omit-
ting to name the station where the liability ceases, makes no differ-
ence.

*Appeal from the Jackson Circuit Court.*—Hon. John W.
Henry, Judge.

Affirmed.

*H. S. Julian* for plaintiffs in error.

(1) The two courts of appeals of Missouri con-
strued section 598, Revised Statutes, 1879, as a rule of
public policy. *Heil v. Railroad,* 16 Mo. App. 363; *Orr v.
Railroad,* 21 Mo. App. 336; *Baker v. Railroad,* 34 Mo.
App. 112. The supreme court in the *Dimmitt case,*
construed it as a rule of evidence and says it establishes
"the English rule" in this state. *Dimmitt v. Railroad,*
103 Mo. 433; *Nines v. Railroad,* 107 Mo. 478; Law-
son's Contract of Carriers, 239. (2) Though the car-
rier may limit its liability, by special contract, to its own
line, yet, where it receives goods marked to a particular
place, it is bound *prima facie,* by the marks and direc-
tions, to deliver at such place, though it be beyond his
own route. The contract of the shipper is with the
carrier to whom he intrusted the goods. Porter on
Bills of Lading, 329; *Muschamp v. Railroad,* 8 M. &
W. 421; *Wilby v. Railroad,* 2 H. & N. 703; *Railroad
v. Collins,* 7 House of Lords, 194; *Coxon v. Railroad,*
5 H. & N. 272; *Southern Express Co. v. Shea,* 38 Ga.
519; *Gordon v. Railroad,* 34 U. C. Q. B. 224; *Jennings
v. Railroad,* 128 N. Y. 451. (3) A term in a written
contract or bill of lading may be explained by parol
testimony, but never added to, changed or varied.
*The Delaware,* 14 Wall. (U. S.) 579; *Collander v. Dins-*

Minter Bros. v. South Kansas R'y Co.

*more*, 55 N. Y. 200; *Railroad v. N. L. Packet Co*, 70 Ill. 217; *Wayne v. The Gen. Pike*, 16 Ohio, 421; Porter on Bills of Lading, 64; *Sprout v. Donnell*, 26 Me. 187; *Railroad v. Remmy*, 13 Ind. 518; *Arnold v. Jones*, 26 Tex. 335; *Am. Ex. Co. v. Lesem*, 39 Ill. 312.

*Gardiner Lathrop* and *S. W. Moore* for defendants in error.

(1) There was no evidence introduced tending to show that the agent of the defendant, who signed the bill of lading in controversy, had any authority, actual or apparent, to make a contract of shipment beyond the defendant's line of railroad. Such being the case, the law is, that, even though an agreement had been entered into between the plaintiffs and such agent, it would not bind the defendant. This matter is expressly passed upon in *Grover & Baker Sewing Machine Company v. Railroad Company*, 70 Mo. 672; *Turner v. Railroad*, 20 Mo. App. 632. (2) The bill of lading upon which plaintiffs' suit was brought, contained the specific agreement that the duty and responsibility of the defendant should cease when the goods had passed beyond its control and had been delivered to a connecting carrier. The fact that the name of the station is left blank is of no importance, inasmuch as the shipment was consigned to a point beyond the defendant's line. *Dimmitt v. Railroad*, 103 Mo. 433; *Nines v. Railroad*, 107 Mo. 475; *Hill v. Railroad*, 46 Mo. App. 517; *Glass Co. v. Railroad*, 44 Mo. App. 416.

*H. S. Julian* for plaintiff in reply.

(1) The point made by counsel on the question of agency is not well taken, because it is a matter of defense that should have been pleaded and proved.

*Sewing Machine Co. v. Railroad,* 70 Mo. 675. This court will assume the agent had authority, until the contrary appears in commenting on the *Grover case* in *Loomis v. Railroad,* 17 Mo. App. 351, says: "As this contract (a bill of lading) was admitted in evidence without objection, we are authorized to assume that it was executed by a general agent having authority to make such a contract." There is no evidence showing whether the agent who signed this bill of lading was a local or general agent. (2) "It hardly lies in the mouth of the defendant to object here to a technical blunder which he waived on the trial by adopting it" and invited it. *Davis v. Brow,* 62 Mo. 313; *Noble v. Blunt,* 77 Mo. 235; *Walker v. Owens,* 79 Mo. 568.

SMITH, P. J.—The defendant is a railroad corporation in this state whose line extends from Kansas City, in this state, to Girard, in the state of Kansas, at which latter place it connects with the St. Louis & San Francisco railroad, which, with the Louisville, New Orleans & Texas railway and perhaps other intermediate roads, are so related and connected as to form a continuous line of common carriers from Kansas City to New Orleans, in the state of Louisiana.

On the twenty-fourth day of August, 1886, at Kansas City, the plaintiffs delivered to defendant one car load of seed oats, to be carried to New Orleans. The bill of lading issued to plaintiffs, by defendant recited that plaintiffs had shipped over its road "from Kansas City, Missouri, to New Orleans, Louisiana, to shippers' order, two hundred and thirty-four sks. oats— consignee, Minter Brothers, New Orleans. Notify R. B. Jones. No. car, 6191, M., K. & T." Nearly two months later the Louisiana, New Orleans & Texas railway company offered a car of oats, number 3366, to the said Jones, who declined to receive the same,

both on account of the quality and the delay in transit. The usual time required for the shipment of freight by railroad from Kansas City to New Orleans was six or seven days. The oats shipped in car 6191 were of different quality from those offered in car 3366. It appears that the oats, if the same as shipped, had been transferred from the former numbered car to the latter, somewhere along the line of transit.

Jones declining to receive the oats, by the direction of the plaintiffs, the same were turned over to another commission house and sold. The amount realized by the sale was paid to the plaintiffs' consignors. The plaintiffs sued to recover damages for the failure to carry and deliver the oats according to the agreement between plaintiffs and defendant.

The defense interposed by the answer was, that the defendant was not liable, since, by the bill of lading sued on, it was "especially agreed by, and between, this company and said consignee that the responsibility of this company as a common carrier shall cease at the station of this company where said goods are delivered or tendered to such consignee or owner or company or carrier." "The duty of this company shall be considered fully performed and accomplished, and the liability of the company as common carriers terminated on the arrival of the goods or property at said station, or by the delivery or tender to carriers as above provided."

The bill of lading was signed by one "C. M. Ferris, agent," at Kansas City. It was shown that he had no authority, either express or implied, to bind defendant for the tranportation of the plaintiffs' oats beyond the end of its own line, or, in other words, to execute a through contract of shipment from Kansas City, in this state, to New Orleans, in the state of Louisiana; nor that the dely in forwarding the car to its destination occurred on defendant's line, or that it

was occasioned by the negligence of defendant. Nor
does it appear that if the oats offered to Jones in New
Orleans were not those shipped by the consignor; that
the substitution of the former for the latter occurred
on defendant's line or that it was occasioned by any
act of defendant.

Upon the conclusion of the plaintiffs' evidence
showing these facts, amongst others, the trial court
instructed the jury that the plaintiffs were not entitled
to recover. The judgment was accordingly for defend-
ant, from which the plaintiffs have appealed.

The question thus presented for decision is, whether
the trial court erred in refusing to submit the case on
the plaintiffs' evidence to the jury. Involved in its
solution are two others underlying it, to which we must
give attention. The first of which is, whether the bill
of lading was a valid undertaking by the defendant to
deliver the plaintiffs' oats at New Orleans, a point
beyond the end of its own line. It is incontrovertibly
true that the bill of lading bound the defendant to
transport, without delay, the plaintiffs' oats over its own
line, and at the end thereof to deliver the same to the
connecting railway carrier. There is no contention
that this duty was unperformed by the defendant.
But the contention is, that defendant did not, without
delay, or that it did not deliver the oats at all, at the
point of destination, as it was bound to do under the
terms of the bill of lading. On the other hand, it is
insisted that, though the bill of lading by its terms
stipulated for the prompt delivery of the plaintiffs' oats
at New Orleans, that such stipulation was invalid, for
the reason that it was not shown that the station agent
of the defendant, who signed the bill of lading, had
authority, either express or implied, to bind the
defendant by such stipulation.

*Prima facie* a station agent can only bind his com-

pany in contracts of carriage to the end of its road.
And there is no evidence present in the record to show
that the bill of lading, so far as it is to be construed a
through contract, was entered into by a duly authorized
agent of the defendant. It was necessary to introduce
some evidence tending to prove that the station agent
at Kansas City had authority, either express or implied,
to bind defendant in such an undertaking. *Patterson
v. Railroad*, 47 Mo. App. 570; *Crouch v. Railroad*, 42
Mo. App. 248; *White v. Railroad*, 19 Mo. App. 410;
*Turner v. Railroad*, 20 Mo. App. 632; *Orr v. Railroad*,
21 Mo. App. 336; *Grover v. Sewing Machine Co.*, 70
Mo. 678; *Baker v. Railroad*, 91 Mo. 152. And in the
absence of such evidence such bill of lading as a
through contract of shipment would not bind defend-
ant. *Patterson v. Railroad, supra.*

As was said by THOMPSON, J., in *Crouch v. Rail-
road*, just cited: "By the principle of the common law as
established in this state, a common carrier who receives
goods for transportation to a point beyond his own line,
engages only to carry them safely, and within a reason-
able time, to the end of his own line and deliver them
to the next connecting carrier to continue or complete
the transit, unless the usage of the business or the
carrier or his conduct or language shows that he takes
the parcel as carrier for the whole route." Citing
*Coats v. Express Co.*, 45 Mo. 238; *McCarty v. Railroad*,
9 Mo. App. 159; *Goldsmith v. Railroad*, 12 Mo. App.
479. Nor does the fact that the carrier so receiving the
goods gives a through rate of freight take the case out
of this rule. *Crouch v. Railroad, supra.* And as there
is no evidence offered, outside of the unauthorized
undertaking contained in the bill of lading, showing an
agreement of any kind by defendant to become liable
for default of connecting lines, it must be assumed, for
the purposes of this case, that there was no such valid

undertaking by defendant.

It is argued that, since the bill of lading was admitted in evidence without objection, in the first instance that the objection that it was not signed by an agent of the defendant having authority to bind it by an undertaking to transport plaintiffs' oats to a point beyond the end of its own line, could not be raised by a demurrer. The bill of lading, as a contract for the shipment over the defendant's line, and the delivery to a connecting carrier was properly admissible in evidence. That was as far as it was admissible, unless followed by other evidence tending to show authority in the station agent to render defendant liable for defaults occurring on the route of shipment beyond the end of its own line. At the conclusion of the plaintiffs' evidence, it was proper, we think, for the court, as a matter of law, to construe the bill of lading in connection with the other evidence adduced, and to declare whether the defendant was, or was not, liable for negligence occurring in the transit beyond its own line.

The other question already referred to is this: Suppose the bill of lading was signed by an agent having authority to enter into a binding bill of lading for the through shipment of freight to points beyond the end of its own line, still, did the defendant, by the terms of the bill of lading in question, bind itself to deliver, without delay, or at all, the plaintiffs' oats at New Orleans? The present statute in respect to the liabilities of common carriers was in force in 1886, when the bill of lading under consideration was executed. Revised Statutes, 1879, sec. 598; Revised Statutes, 1889, sec. 944. It was especially provided, as already stated in the bill of lading, that the responsibility of the defendant as a common carrier, should cease at the station where the plaintiffs' oats were delivered to the

carrier whose line was a part of the route to the place of destination. Words could not well be plainer. There could be no misunderstanding of this provision of the bill of lading.

It would have been competent for the plaintiff, upon whom was devolved the burden of proof, under' the issues made by the pleadings, to have shown by evidence any delay, loss or damage to the plaintiffs' oats while in transit over the defendant's line, or in the delivery of the same to the connecting carrier. By the terms of the bill of lading, the defendant's liability for the prompt and safe transit and delivery of the oats, according to contract, continued to the end of its line, wherever that was, and no further. We do not think the fact that the name of the station where the transit on its line ended was not mentioned in the bill of lading is of importance. Its exemption from liability under the specific agreement set forth in the bill of lading begun after it had safely, and without unreasonable delay, transported and delivered the plaintiffs' oats to the connecting carrier. The language of the exemption clause was, we think, sufficiently specific for every purpose.

It is now the well settled law of this state that, notwithstanding the statute already referred to, that where a consignor and a railroad company enter into a contract by which it is provided that the liability of the latter should cease after the goods had passed out of its possession, such contract is valid and must be upheld. *Dimmitt v. Railroad*, 103 Mo. 433; *Norris v. Railroad*, 107 Mo. 475; *Hill v. Railroad*, 46 Mo. App. 517; *Glass v. Railroad*, 44 Mo. App. 416.

From these considerations it inevitably follows that the question stated at the outset must be answered in the negative.

The judgment will be affirmed. All concur.