JAMES R. HANCE, Respondent, v. WABASH WESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1894.

1. **Common Carriers**: CONTRACT FOR SHIPMENT BEYOND CARRIER'S ROUTE. The acceptance by a railway carrier of goods consigned to a point beyond its route is, under section 944 of the Revised Statutes of 1889, evidence of a contract for through shipment. The evidence in this case is further *held* to warrant the finding of a special contract for through shipment.

2. **Statutes**: PLEADING. It is not necessary to the pleading of a general statute, such as that section, that specific mention or reference to its title or date of enactment should be made. The facts to which such a statute is applicable need only be alleged; it is then self-applying.

3. **Common Carriers**: LIMITATION OF COMMON LAW LIABILITY. It is competent for a common carrier to limit its common law liability by a special contract, not providing against negligence and supported by the consideration of a reduced rate of freight; without a special consideration such a contract is invalid.

4. ———: LIMITATION OF LIABILITY TO ITS OWN ROUTE. But a common carrier may, without a special consideration, limit its liability to loss or damage occurring on its own route; such a restriction is equivalent to a contract to carry only to the terminus of its own line.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*George S. Grover* for appellant.

(1) The proposition of defendant, not having been accepted by the plaintiff, never ripened into a contract between those parties. *Robinson v. Railroad,* 75 Mo. 494; *Allen v. Chouteau,* 102 Mo. 323; *Robinson v. Tapley,* 48 Mo. App. 239. (2) The special contract

in evidence, supported, as it was, by a reduced rate, was valid. Under it, as defendant only undertook to transport the property sued for over its own line, it was not responsible for the subsequent damage to, or destruction of, such goods while the same were in the possession of a connecting carrier. *McFadden v. Railroad*, 92 Mo. 343; *Nines v. Railroad*, 107 Mo. 475; *Rogan v. Railroad*, 51 Mo. App. 665; *F. A. Drew Glass Co. v. Railroad*, 44 Mo. App. 416; *Hill v. Railroad*, 46 Mo. App. 517; *Railroad v. Cleary*, 77 Mo. 634.

*J. D. Barnett* for respondent.

The special contract relied upon by defendant was without consideration and void. Plaintiff paid the full rate and received no reduction. *McFadden v. Railroad*, 92 Mo. 343.

BOND, J.—This is an action *ex delicto* brought by plaintiff against defendant for failure to perform its duty as a common carrier in transporting ten tons of tow, delivered to it by the plaintiff for carriage from Montgomery City, Missouri, to Boston, Massachusetts.

The defense made by the answer is, that the shipment in question was received by the defendant under a certain special written and printed contract with the plaintiff, wherein, for the consideration therein named, the defendant undertook and agreed to transport the goods from Montgomery City, Missouri, on the line of its railroad to the city of St. Louis, Missouri, and there to deliver the shipment to the next succeeding carrier for transportation to the city of Boston, Massachusetts.

The answer further averred that it was also provided in said contract that defendant should not be liable except for negligence, nor for any damages

occasioned to said property by fire while in transit; nor for any damages to said property after the same had been delivered in good order to the next succeeding carrier.

The answer set up further stipulations of said contract, and averred that defendant had no other contract than the special written contract with plaintiff for the transportation of said property. It averred that the defendant safely transported said property over its line of railroad from Montgomery City to St. Louis, and there delivered it to the next succeeding carrier.

The reply of the plaintiff denied the special defenses made in the answer, and further stated that there was no consideration for any contract limiting the liability of defendant or releasing it in any way from its obligation to carry the shipment safely to its destination; that plaintiff under his contract, made by the defendant's agent in St. Louis, agreed to pay defendant its full and usual charges for the carriage of his goods, and that no release of defendant's liability to him was made.

The case has been twice tried in the circuit court. On the first trial a verdict for the plaintiff was set aside as being against the weight of the evidence. Upon the new trial thus had, there was evidence tending to show that the plaintiff was conducting a general merchandise business, and also operating what was known as the Montgomery City Tow Mills at Montgomery City, Missouri; that the latter was situated about a quarter of a mile from the former; that plaintiff engaged in correspondence with the general freight agent of the defendant in St. Louis with reference to the shipment from Montgomery City to Boston, Massachusetts, of certain tow produced by his aforesaid mills; that said agent proposed to plain-

tiff to ship the product from Montgomery City to Boston for a rate of fifty-eight and one-half cents or at least over fifty cents per hundred, or for about $100 for the entire shipment of ten tons of tow; that thereupon plaintiff told Miss Donaldson, who was a bookkeeper at his general store, to give the local agent of defendant at Montgomery City "shipping directions;" that Miss Donaldson took a form of bill of lading of the defendant, and inserted thereon the following:

"Glover & Wilcomb, 1 car excelsior, - - 20,000
"Boston, Mass.         Car No. 20,543, W. &. P.
"Montgomery City Tow Mills.      N. D."

The bill of lading thus executed contained, among others, the following stipulations releasing defendant from liability for damages:

*First.* "By fire."

*Second.* "After the shipment shall have been receipted for in good order by consignees or their agents, or the next succeeding carrier."

It also provided that the amount of loss or damage to the owner of said goods should be computed at the full value or costs of said goods at the place or time of shipment.

There was evidence tending to show that Miss Donaldson, who was plaintiff's bookkeeper, often attended to bills of lading pertaining to the business carried on at his general merchandise store, and that the business conducted at the tow mills was a separate one. With reference to her authority to represent plaintiff in shipments from the tow mills, he testified, to-wit:

"*Q.* Did she have anything to do with making bills of lading and contracts with reference to shipments of tow? *A.* No sir; none whatever; I made those contracts always myself; they had to be made with the general freight agent."

The goods, after being received by the defendant, were transported with safety to the termination of its line at St. Louis, Missouri, and there delivered in good condition to the next succeeding carrier, and were further transported in safety until they reached the state of Ohio. While being carried between two stations in that state the car containing plaintiff's shipment took fire, whereby the goods were so damaged that, when they arrived at Boston, the consignees refused to accept them. The plaintiff had agreed to sell the car load of goods upon its delivery in Boston to the consignees for about $500.

The freight rate on shipments of excelsior from Montgomery City of Boston was fifty-three and one-half cents per hundred. The rate on tow between the same points was fifty-nine cents. The plaintiff testified that he shipped excelsior, and paid the full rate, fifty-three and one-half cents (about $107), charged. There was no evidence that the burning of the goods was caused by the negligence of the defendant or its servants.

The jury returned a verdict for plaintiff, from which the defendant has appealed to this court.

We cannot agree with the first position of appellant, that there was no evidence of a through contract between the parties, other than the bill of lading. The basis of a legitimate inference of such a contract *is* furnished by the evidence of the respondent. He states that he made an agreement for through shipment with the general freight agent of appellant (to whom he was referred by the local agent); that, although not positive as to the exact terms proposed, the offer was made to take the car load to Boston for something over fifty cents per hundred, amounting to about $100; and that he acted under and performed this proposition by delivering his goods to appellant's railroad for such

through shipment, and by paying the full rate charged.

Again, under the decision of the supreme court in the *Dimmitt case* (103 Mo. 433), construing the carrier's act (Revised Statutes, 1889, sec. 944), it is said: "By its provisions the act of acceptance by a common carrier of property to be transferred to a place beyond the terminus of its route is evidence of a contract to carry such property to the place of its destination. The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such carrier to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated."

There was then both in fact, and by legal intend- ment, a *prima facie case* in favor of respondent under the facts shown in this record.

There was no occasion (as argued by appellant) for respondent to plead the statute governing common carriers (Revised Statutes, 1889, sec. 944) by specific mention or reference to its title or date of enactment. It is only necessary to the application of general statutes, such as this, that the facts within their purview should be alleged. The statutes are then self applying. *Nines v. Railroad*, 107 Mo. 475; *Dimmitt v. Railroad*, 103 Mo. 433; *Doyle v. Wurdeman*, 35 Mo. App. 330.

The case of *Nall v. Railroad*, 97 Mo. 74, is not adverse to *this view* when restricted to the fact in judgment, which was whether or not a common law action against a carrier raised a question of construction of the federal constitution under the carrier's act? But whatever may be the extent of the *dicta* in that case, it is not authority since the rulings (*Dimmitt v. Railroad*, 103 Mo. 433, and *Nines v. Railroad*, 107 Mo. 475), that the act of acceptance of goods consigned

beyond the line of the carrier, or the act of issuing a bill of lading on such consignment, makes a *prima facie* case under the statute in question.

Since there was evidence of the true contract, as seen above, we can not sustain appellant's assignment that there was no evidence on that point. Nor can we reverse the case as being against the weight of the evidence, as there has been one new trial heretofore granted on that ground. *McShane v. Sanderson*, 108 Mo. 316.

On the theory of the evidence tending to show that the contract contained in the bill of lading was authorized by the respondent, the appellant insists that it was supported by a reduced rate, and therefore exempted it from liability as carrier for the exceptions therein set forth.

That it is competent for a common carrier to limit its common law liability, as such, by a special contract not providing against negligence, and supported by a consideration of a reduced rate of freight, is the law of this state. *Conover v. Express Co.*, 40 Mo. App. 31; *Rogan v. Railroad*, 51 Mo. App. 665; *McFadden v. Railroad*, 92 Mo. 343.

The uncontradicted evidence in this case showed that the shipment billed excelsior was in fact that species of tow. It is conceded by appellant that the regular rates for transporting excelsior from Montgomery City to Boston was fifty-three and one-half cents per hundred, which is the exact amount paid by respondent.

There is, therefore, no ground whatever for the assumption that the special contract in this case is supported by the consideration claimed. Without such consideration, it is clearly invalid as to the clause therein releasing appellant from liability for loss by fire.

On the other hand, there is now no necessity for a

special consideration to support the other clause, providing that the carrier is to be liable only for loss or damage occurring on its own line, since the supreme court has directly adjudged that such a restriction is equivalent to a contract to carry the property *only* to the terminus of its own line. *Nines v. Railroad, supra,* affirming *Dimmit v. Railroad, supra;* see, also, *Hill v. Railroad,* 46 Mo. App. 517. Except for this ruling of the supreme court, we should hold that a contract limiting liability for losses to its own line might consist with a contract for through carriage over the lines of connecting carriers; and that, therefore, such a contract of limitation would be one against liability as a common carrier for a *part* of the route, and hence invalid except within the limits of the general rule and when supported by a special consideration. *Drew v. Railroad,* 44 Mo. App. 416. But since the controlling decisions of the supreme court, *supra,* we must hold that a contract to be liable only for losses on its own line is the same as a contract only to carry over its own line, and, as the latter never needed any consideration, neither does the former now require any other consideration than the contract of shipment.

Appellant is likewise entitled, if the goods were shipped under the special contract in evidence, to have the damages assessed by the standard of the *market* at the place of shipment. Such has been held to be the effect of a similar clause to the one in the present bill of lading, computing the loss by the value of the goods at the time and place of shipment. This clause is also valid to *that* extent without any special considerations. *Rogan v. Railroad,* 51 Mo. App. 665.

As the undisputed evidence in this case shows that the loss or damage to the goods did not occur on appellant's line, it would have been entitled on this ground to a verdict, if the jury had found the issue as to the

execution of the contract in the bill of lading, by authority of respondent, against him.

We are, however, concluded, as we have seen, by the finding on that issue, unless there was error in the instructions of the court prejudicial to appellant.

The court gave the following instruction for the respondent. "If the jury believe from the evidence that plaintiff paid the full rate of freight charged by defendant for the shipment of this class of goods shipped by him, and that defendant as to the shipment made no deduction or special rate for him as to that shipment, the jury will disregard the special contract or bill of lading set up by defendant in his answer."

In the light of the proof of respondent, that he paid the full rate of freight charged and received no special rate or deduction on the shipment sued for, the above instruction was prejudicial to appellant in excluding from the jury, on that hypothesis, the two clauses of the bill of lading which we have shown were valid without any such consideration. For this misdirection, the cause must be reversed.

On a retrial of the cause, the following issues should be submitted to the jury by the evidence and instruction: Were the goods carried under the special contract relied on by the defendant, or were they carried without any special contract? If they were carried under the special contract, and the loss occurred beyond the terminus of the defendant's line, the plaintiff can not recover. If carried without a special contract, the plaintiff is entitled to recover the value of the goods at Boston at the time when they should have arrived there in due course of transportation,—less freight remaining unpaid,—and this regardless of the place where the loss happened.

The judgment herein is reversed, and the cause remanded to be tried in conformity with this opinion. All concur,